# Williams's Appeal.

1. An act incorporated a borough and other territory into a city, and directed a tax of two per cent. to be levied on the property lying in what was the borough, "until the present debt of the borough" should be paid. A subsequent act directed that, after advertisement, the trustees should, four times a year, offer all the money in the treasury publicly, and "award the same to the creditor or creditors who will release the greater sum of indebtedness therefor; and no interest shall be computed on said indebtedness" after the borough charter was annulled.    *Held*, that the last act was unconstitutional.

2. If a municipality be authorized to contract debts, no subsequent legislation can impair them.    *Per* Trunkey, P. J.

3. The legislature may pass an act which, if not acting directly on the terms of the contract, may change the remedy the party had at its passage.    *Id.*

October 25th 1872.    Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Appeal from the Court of Common Pleas of *Venango county:* In Equity : No. 176, to October and November Term 1872.

A bill was filed by James Bleakley against William H. Williams, John J. Broadhead and William Hassen, trustees of the First District of Oil City, and H. L. Davis, treasurer.    The bill averred that Patrick Hughes, on the 23d and 28th of November 1867, respectively recovered judgments against the borough of Oil City for $570.75 and $3924.23, on each of which payments had been made amounting together to $1172.25; that writs of mandamus had been issued in January 1868 and January 1869, to compel the payment of the balances due on the judgments, to which answers were made that there was no money in the treasury to pay the judgments.    They had been assigned to the plaintiff.

[*Williams's Appeal.*]

By Act of March 1st 1871, the borough of Oil City and adjoining territory were incorporated into the "City of Oil City," and the powers of the Burgess and Council of the borough of Oil City, &c., were vested in the members of the city council, chosen on the north side of the Allegheny river, which was the 1st district of the city. These members were required annually to assess and collect not exceeding two per cent. on the valuation of property lying on the north side of the river until the debt of the borough of Oil City should be paid; "and the said tax shall be applied to that purpose and none other," those councilmen to have power to appoint a separate treasurer.

By the 32d section of the Act of March 11th 1872, the powers vested in the councilmen before mentioned, were vested in a board of trustees, consisting of the defendants who were required to use their efforts to discharge the indebtedness of the borough before its incorporation with the city as speedily as possible, and to the best advantage of the tax-payers of the 1st district.

The plaintiff complained that the defendants had refused to pay his judgment out of any unappropriated money of the borough treasury, or out of the first money that should be received for the use of the borough, and had refused to levy the tax of two per cent. authorized to be raised to pay the debt of the borough, " but propose to offer publicly all the money in the treasury, and to award the same to the creditors, whether with or without judgments, who will release and discharge the greatest sum of indebtedness therefor," and that the defendants refused to pay any interest subsequently to March 1st 1871.

The prayers were for an injunction restraining the trustees from offering the money which might be in their hands, or might come into their hands until the plaintiff be paid; that they be compelled to pay the judgment-creditors of the borough of Oil City, in the order in which the writs of mandamus were served, and to levy taxes to the amount of two per cent. on the valuation of the property on the north side of the Allegheny river, until the judgments should be paid, to pay interest on them, and for further relief. The answer, admitting substantially most of the allegations of the bill, set out at large the 32d section of the Act of 1872, referred to in the bill; the concluding part of which is as follows :—

"And it is hereby declared to be the duty of the said trustees to use their efforts to liquidate and discharge the indebtedness which accrued against the borough of Oil City before the incorporation of the city of Oil City as speedily as possible, and to the best advantage of the tax-payers of the said First District of the city of Oil City; and to this end they shall, in the months of January, April, July and October of each year, at a time and place of which notice shall be given for three weeks by publication

in one or more newspapers published in said city, offer publicly all the money in the treasury, and shall award the same to the creditor or creditors, or their legal representatives, who will release and discharge the greater sum of indebtedness therefor; the said money to be offered in sums of $100; and no interest shall be computed on said indebtedness subsequent to March 1st 1871, when the charter of the said borough of Oil City was annulled."

The parties after filing the bill and answer made this agreement:—

"And now, to wit, August 20th, 1872, for the purposes of argument and hearing it is admitted that at the time of filing the above bill the defendants refused to apply the money in the hands of their treasurer, the said H. L. Davis, in the order required in the writs of mandamus against said borough of Oil City, including the judgments of the plaintiff and other claims, or to apply the same in any other way except as provided by the Act of Assembly of 1872, set forth in defendants' answer, and have declined to compute or pay interest on said judgments and other claims against said borough subsequent to March 1st 1871.  And it is hereby agreed that the case shall be set down for argument on bill, answer and amendments and this admission."

After hearing, the Court of Common Pleas (Trunkey, P. J.), delivered the following opinion, which was adopted by the Supreme Court:—

"The plaintiff is the owner of two judgments against the borough of Oil City, one obtained on the 28th of November 1867, the other on the 23d of November 1868.  Upon these judgments writs of mandamus were issued, to the former of which the defendant answered February 19th 1868, that there was no money in the treasury with which to make payment, and to the latter a like answer on January 25th 1869.  The legislature, by Act of March 1st 1871, incorporated the city of Oil City, embracing within its limits the territory of the late borough, and providing for the payment of the debts of said borough.  In pursuance of said provision a tax was levied and collected, but before any part thereof was paid out on the indebtedness of the borough a supplementary act was passed March 11th 1872, which created a board of trustees to take charge of the money and 'use their efforts to liquidate and discharge the indebtedness which accrued against the borough of Oil City before the incorporation of the city of Oil City, as speedily as possible and to the best advantage of the tax-payers of the said first district of the city of Oil City, and to this end they shall, in the months of January, April, July and October of each year, at a time and place of which notice shall be given for three weeks by publication in one or more newspapers published in said city, offer publicly all the money in the treasury, and shall award the same to the creditor or creditors or their legal represen-

tatives, who will release and discharge the greater sum of indebtedness therefor, the said money to be offered in sums of $100, and no interest shall be computed on said indebtedness subsequent to March 1st 1871, when the charter of said borough of Oil City was annulled.'

"The plaintiff's judgments are among the earliest obtained against said borough. The defendants refused to apply the money in the treasury in the order required in the writs of mandamus against said borough; they refused to apply the money in any other way than is pointed out in the 32d section of the Act of March 11th 1872, and they have declined to compute or pay interest on said judgments from March 1st 1871. Upon the facts the only question for present adjudication is, is that portion of said Act of Assembly valid, which requires said trustees at stated times, to auction the money in the treasury to the creditors who will release the greater sum of indebtedness therefor, and which stops interest on all indebtedness of the borough after March 1st 1871?

"The legislature have absolute control over a municipal corporation, and may alter its character, remove its officers and appoint others, or wipe out its existence: Philadelphia v. Fox, 14 P. F. Smith 169. The municipality is the creature of the state, and if it was authorized to contract debts no subsequent legislation can impair such obligations. The constitutional prohibition takes effect on contracts, whether between a state and an individual, or between individuals: Potter's Dwarris Statutes 447. The state by legislation cannot impair the obligation of its own contracts; it cannot alter a municipal charter, or revoke it, so as to destroy the lawful contracts of the corporation. A lawful repeal of a statute cannot be constitutionally made to destroy contracts made under it: Id. 474. It has not been contended by the defendant, as I understand the argument, that the legislature can enact a law impairing the obligation of a contract made by a municipal corporation. I consider it clear they cannot.

"But it is said the act in question only affects the remedy. The individual citizen has no vested right in what is known in the law as remedies, nor in any particular existing remedy. The existing laws of a state may be amended or repealed, and there is no obligation on the part of the state to protect its citizens against incidental injury occasioned by changes in the law. Whatever belongs merely to the remedy may be altered, provided the alteration does not impair the obligation of the contract, but if a statute so changes the nature and extent of an existing remedy as materially to impair the rights and interests of the owner of property, it is just as much a violation of the constitutional provision as if it directly overturned his rights and interests. If the statute does not impair the right or property itself, if it still leaves the party a substantial remedy, according to the course of justice, as the right existed at the time of its passage, it does not impair the obligation

of the contract, nor will it be held to do so, merely because the
new remedy is less efficient, less speedy or less convenient than the
old one: Ibid. 472.

"A law prohibiting the sale of property under execution, unless
it will bring two-thirds of its appraised valuation, is unconstitu-
tional and void: McCracken *v.* Hayward, 2 How. 608; Penrose
*v.* Erie Canal Co., 6 P. F. Smith 46.

"It is competent for the legislature to enact a stay law for a
definite and reasonable time, but a stay for an indefinite time is
void. If the law be so changed that the means of enforcing a
contract are materially impaired, the obligation no longer remains,
and when the act creates the possibility of a perpetual suspension
of remedies, or a suspension for a time that all courts of justice
would deem unreasonable, it is a plain violation of the provisions
of the federal and state constitutions, which protect the inviolability
of contracts: Bunn, Raiguel & Co. *v.* Gorgas, 5 Wright 441.

"It cannot be denied that the legislature have power to pass an
act which, without acting directly upon the terms of the contract,
changes the remedy a party may have at the time of its passage,
and so embarrasses the remedy that the creditor may be greatly
injured without redress. Especially will the creditor be so injured
by frequent changes in the statutes, though none of them may be
unconstitutional. Whoever contracts with a municipality does so
knowing that the state may do with the corporation whatever she
shall deem expedient, as well as he knows the obligation of the
contract cannot be impaired. He knows remedies may be changed,
that he may be hindered, delayed and embarrassed. No better
illustration exists of what he is liable to encounter than the statute
referred to in the bill and answer, relative to the debts of the
borough of Oil City. The Act of March 24th 1868, P. L. 444,
provided that four-fifths of the tax authorized to be levied should
be paid in borough orders, and the remaining fifth in money, for
the exclusive use of the fire department. Not a dollar was
allowed to be applied to the indebtedness of the borough. The
officers were allowed to settle with their creditors and give bonds
payable in the future. But all remedy to enforce payment was
taken away. No remedy express or implied was allowed until
after those bonds should become due. This was a stay law on all
existing indebtedness of not less than one nor more than twenty
years, at the option of the debtor. And it was passed after the
borough officers had filed their answer to the mandamus on the
larger judgment of the plaintiff. By Act of March 1st 1871, P.
L. 137, the existence of the borough was wiped out, but a fair
provision was made for payment of its debts. The proper officers
levied a tax, but before any portion of the money was paid out,
the Act of March 11th 1872 ousted the old officers, created new
ones, and placed it out of the present power of the plaintiff to

collect his judgments. He is now subjected to a second stay, for what time it is impossible to determine.

" When the plaintiff's debts were contracted with the borough of Oil City, creditors had like remedy against said borough that existed, and still exists, under the general laws, to compel municipal corporations to pay their lawful debts. That remedy is prompt and is certain.

" The creditor could resort to it at once, and the creditor first in time will secure payment out of the first money coming into the treasury. This legal and certain remedy, then existing, is so much a part of the contract that it cannot be wholly taken away, nor changed so as substantially to deprive the creditor of all remedy. The borough of Oil City has been subjected to such special legislation that, if constitutional, the creditors are not only deprived of all remedy which existed when the credit was given, but the borough officers are forbidden to pay any creditor who will not release a part of his debt, while others offer to release. The creditor cannot collect and the debtor is prohibited from paying.

" To what amount the borough of Oil City was indebted does not appear, nor is it approximately shown within what time the trustees can pay the indebtedness by the tax they are authorized to levy. From the admitted facts it is reasonable to assume that it is large, and that many years must elapse before it can all be paid. If the part of the act in question is valid the money raised by taxation cannot be distributed *pro rata* among the creditors, in which case there would be some appearance of fairness; nor can it be applied to the oldest creditors in the order of contracts, nor to the vigilant creditor who obtained judgment by due legal process and issued the mandatory writ then authorized by law. The oldest and most vigilant creditor, perhaps the most worthy, will be the last paid if others are willing to sacrifice more than he. If he decline the sacrifice he must wait an unknown period without interest.

" When will stay of execution expire on the plaintiff's judgments? The time when process will be allowed to enforce payment is as uncertain as the discount a needy creditor will make to get a portion of his honest dues from the borough. The stay will be longer or shorter, in proportion as the wants of creditors will force a greater or less sacrifice. As we have seen under the Act of March 24th 1868, the plaintiff's hands are tied not exceeding twenty years; under the Act of March 11th 1872, his hands are again tied for an indefinite period.

" It matters not that the plaintiff has his option to underbid other creditors and receive a part of his due in satisfaction of the whole. There can be no pretence that the legislature can compel a creditor to release part of his claim, under penalty of being indefinitely barred from its collection.

[Williams's Appeal.]

" The conclusion from the authorities cited, and others of like tenor, is ' that in respect to contracts which do not treat of remedies, we hold any law to be constitutional which gives a stay for a time that is definite and reasonable, but unconstitutional if the stay be for an indefinite time, or for a time that is unreasonable, though definite :' Breitenbach *v.* Bush, 8 Wright 318.

" It is clear that the Act of March 11th 1872 operates as a stay of execution process for an indefinite time. After four years' delay from the rendering of plaintiff's judgments, during which, under the Act of March 24th 1868, the borough officers could not have paid had they been willing, it is most unreasonable to tack on another stay for an uncertain term, although the payment be not for ever postponed. The constitutional prohibitions forbid such legislation.

" The plaintiff is entitled to interest on his judgment.    The law gave interest on debts due and unpaid when the debts were contracted.    The bonds were subject to interest.    The law gave interest upon the judgments.    Whether expressed or not he is entitled to interest.    ' Implied contracts are such as reason and justice dictate from the nature of the transaction, and which the law presumes that every man undertakes to perform.    The constitution makes no distinction between the one class of contracts and the other.    It then equally embraces and applies to both :' 2 Story Const. sec. 1377.

" The attempt to deprive a creditor of interest on an overdue debt, which the debtor refuses to pay, is in the teeth of the implied contract and of the constitutional provision that its obligation shall not be impaired.

" So much of the Act of March 11th 1872 as requires said trustees at stated times to offer publicly all the money in the treasury, and award the same to the creditors who will release the greater sum of indebtedness therefor, and as stops interest on said indebtedness subsequently to March 1st 1871 " violates the constitution clearly, plainly, palpably and in such manner as to leave no doubt or hesitation in our minds.' "

The court thereupon decreed :—

" That the said trustees and treasurer, the defendants in this action, be enjoined from offering the money which is now in their hands or in the treasury, and which is now due and may hereafter become due and be paid into their hands or into the treasury, and that they be enjoined from awarding said money or any part thereof to the creditor or creditors who will release and discharge the greater sum of indebtedness therefor, until the plaintiff be paid the full amount of his judgments.

" That the defendants shall compute and pay interest on each of said judgments from the rendition thereof till the date of payment.

" That the defendants shall pay the judgments of the plaintiff out of the money now in their hands or that may first come into

the treasury or into their hands, unless there be other judgments on which writs of mandamus were issued and served prior to the writs on the judgments of plaintiff, in which case the money shall be paid in the order of said writs so served upon the respective judgments until the plaintiff's judgments are fully paid."

The defendants appealed to the Supreme Court and assigned the decree for error.

*W. McNair*, for appellants.—The legislature may alter, modify or even take away the remedy for the recovery of a debt: Evans *v.* Montgomery, 4 W. & S. 218; Miller *v.* Commonwealth, 5 Id. 488; Deichman's Appeal, 2 Wharton 395; Bolton *v.* Johns, 5 Barr 145; Society *v.* Town of Pawlet, 4 Peters 480; Chadwick *v.* Moore, 8 W. & S. 49; Hepburn *v.* Curts, 7 Watts 300; Satterlee *v.* Matthewson, 2 Peters 380.

*J. D. Hancock*, for appellee.

The opinion of the court was delivered, November 14th 1872, by READ, J.—We have carefully examined the opinion of the learned judge in the court below, and agree with him that so much of the Act of March 11th 1872 as requires the trustees at stated times to offer publicly all the money in the treasury and award the same to the creditors who release the greater sum of indebtedness thereof, and which stops interest on said indebtedness subsequent to March 1st 1871, "violates the constitution clearly, plainly, palpably and in such manner as to leave no doubt or hesitation on our minds."

The decree is right, and it is therefore affirmed at the costs of the appellants, upon the opinion of the court below.